Carr, J.
The sole question in this case, is, whether a testament of personal chattels, not written by the testator, *590 can be admitted to probat on the proof of a single witness, • • where it is contested ? The property involved in the particular case, is said to be small; but the principle is vitally important; the case is one too, I should think, of frequent occurrence: and, therefore, it seems wonderful, that the most diligent search has been able to find scarcely any thing, either in our laws, or in our reported cases, on the subject. In England, the ecclesiastical courts have nothing to do with a will of lands, but they have exclusive jurisdiction of the probat of testaments of personalty, granting administration ■See. In those courts, the settled rule seems to be, that two witnesses are necessary, where the will is to be proved in ■solemn form; which form is necessary in all cases where there is a contest; where there is none, the common form of proof is used; that is, the executor, without citation of such as have interest; calls a witness or witnesses, who {viva voce) testify to the will—or the executor himself testifies, and the judge annexes his probat and seal. Swinb. part 6. 424.
The first question is, did our ancestors bring with them from the.mother country, this ecclesiastical jurisdiction? I presume they did, as a part of the common law in its enlarged sense. The general court was, originally, the tribunal in which all judicial power of every sort was vested. We find the jurisdiction of that court thus defined, in a statute passed in 1705, 3 Hen. stat. at large 289. “ The said general court shall take cognizance of, and are hereby declared to have full power and lawful authority and jurisdiction to hear and determine, all causes, matters and things whatsoever, relating to or concerning any person or persons, ecclesiastical or civil, or to any other persons or things, of what nature soever the same shall be, whether the same be brought before them by original process, or appeal from any other court, or by any other ways or means whatsoever.” Words more comprehensive could not have been selected.
In searching among such of the ante-revolutionary reports, as I could lay my hands on, I have found one case upon the point in question; Goodwin &c. v. Lunan, Jefferson’s Rep. 96. The plaintiffs were church wardens and *591 vestrymen, of the upper parish in Nansemond county, and filed a libel in the general court, as a coutt of ecclesiastical jurisdiction, against the defendant, the minister of their parish, stating various misdeeds and conduct disgracing the clerical character, of which he had been guilty, and praying that he might be corrected, punished and deprived &,c. The defendant pleaded to the jurisdiction of the court, and on that plea it came to be argued in October 1771. Mr. Wythe and Mr. Jefferson were counsel for the libellants; colonel Bland, and John Randolph (the attorney general) for the defendant. Mr. Wythe rested the jurisdiction upon the statute I have quoted; and (the reporter adds) “ That the intention of the legislature was as general as their words, ho produced every proof, of which a matter so plain could admit.” Mr. Jefferson (though on the same side with Mr. Wythe, and thinking the ecclesiastical jurisdiction established beyond a doubt) says, he conceived it did not follow thence, that the court could deprive the defendant of his parish, because visitation and deprivation are no parts of the office of an ecclesiastical judge; and he goes into argument of great research to prove it. Col. Bland, admitted the ecclesiastical jurisdiction of the court, but denied that it gave them cognizance of this matter. The attorney general contended, that the court had not a general ecclesiastical jurisdiction : the scope of his argument was, that the legislature meant to give them jurisdiction in testamentary matters, which are of ecclesiastical jurisdiction in England (this being the only branch of that jurisdiction, of which they then stood in need), and by no means to extend their cognizance to every other branch of that law. The court adjudged that they possessed ecclesiastical jurisdiction in general. Upon the position of the attorney general that the legislature meant to give the general court, only that branch of ecclesiastical jurisdiction which related to testamentary matters, the reporter remarks, in a note,—•“ This could hardly be, because by the act of 1661, ch. G4. the county courts were empowered to grant probat of wills, and administration of estates; so that, at the time of giving this power to the ge *592 neral court, they less wanted this branch of ecclesiastical jurjs¿| icti0n than any other.” It seems from this case, to have been considered, at that day, that the general court had general ecclesiastical jurisdiction, and the county courts that branch of it only which embraced testamentary matters.
I have in my possession an old MS. volume, entitled “ Cases adjudged in the general court of Virginia, from April 1733' to October 1741, taken by Edward Barradall esq. late attorney general there;” and I had great hopes of finding in it some information as to the manner of admitting wills to probat. In the case of Berryman v. Booth, p. 7. of that volume, I find in the argument of the attorney general, the distinction familiarly taken, between the proof of a will in common form, and proof per testes, but no decision on the point.
Judge Tucker, in the appendix to 3 Black. Comm, note A. p. 7. after stating the general court to have been the great reservoir of all judicial power, adds, “ When the revolution took place, it was thought proper to transfer the chancery jurisdiction of the general court to another court. Its jurisdiction in ecclesiastical cases seems to have been either abolished, or become obsolete, except in the cases which have been transferred to the cognizance of the high court of chancery. These are confined to incestuous marriages only, in which cases the court of chancery is authorized to annul the marriage.” The jurisdiction here considered as having been abolished or become obsolete, is (I presume) that general ecclesiastical jurisdiction, which the statute of 1705 was supposed to have conferred on the general court, not that branch of it which embraced testamentary matters, which in 1645, was extended to the county courts, and which, from that day to this, has been, in one form or other, exercised by almost every court of record in the commonwealth. The great question is, how have these courts exercised this power? It is admitted to be a part of the common law, in its enlarged sense, and adopted by our ancestors so far as it was suited to the circumstances of the country. What modifi *593 cations did the courts consider necessary for its adaptation to existing circumstances? for our legislatures have been wholly silent on the subject.
The act of 1615, ch. 9. 1 Hen. stat. at large, p. 302. after stating the mischiefs resulting from the necessity of all persons going to James City for probat <fcc. enacts, “ That all administrations shall be granted at the county courts where such persons did reside or inhabit, and all probat of wills there made &c.” without laying down any rule for the guidance of the courts,—whether the will shall be proved by one witness, as was the common form in the ecclesiastical courts, and the mode of proof as to wills of land in the common law courts, or by two witnesses according to the solemn form of the ecclesiastical courts. We had never had an ecclesiastical court in this country, and the plain county court magistrates of that day, understood but little (I presume) of this solemn form of proof, under which there was to be citation before the ecclesiastical judge, a petition by the party preferring the will, for receiving and swearing the witnesses &c. “whereupon the witnesses are received and sworn accordingly” (saith Swinburne), “and are examined, every one of them secretly and severally, not only upon the allegation or articles made by the party producing them, but also upon interrogations ministered by the adverse party, and their depositions committed to writing; afterwards the same to be published : and in case the proofs he sufficient, the judge doth by his sentence or decree pronounce for the validity of the testament, and this is called a probate per testes.” These are forms wholly unknown to the common law (in the more restricted sense of the term), which delights in the viva voce examination of witnesses, in open court, upon all matters of litigation. When, then, the courts were empowered to take proof of wills, without any mode prescribed, nothing could be more natural than that they should examine the witnesses in court; and as real estate was always considered a worthier subject than chattels, and a will of lands might then, and for a century after, bo established by the proof of one witness, it was also *594 a very natural conclusion, that a will well proved as to lands, must be so as to chattels also. Hence, probably, grew the custom, which has been so general, of requiring but one witness, and the opinion so universal, that a will of personals is well established by such proof. The practice and the opinion, no doubt, embraced wills of lands as well as personals, until the year 1748, when a statute was enacted, declaring wills of lands void unless attested and subscribed by two or more witnesses in presence of the devisor, or wholly writ by the devisor’s own hand. This statute made no change in the mode of execution or probat of wills of chattels.
I have said that wills of land might be established like other common law instruments by one witness, until 1748; because we have no statute of earlier date, changing the mode; and I do not suppose that the english statute of frauds of 29 Car. 2. passed in 1676, affected the question, as it did not apply in terms to the colonies, and was not adopted by any statute of ours.
In 1711, an act was passed, 4 Hen. stat. at large, p. 12. re-enacting that of 1645, and making important additions to it. The former spoke of the probat of wills generally, and may be supposed to relate to wills of personalty alone, as a will of lands needed no probat to give it validity; but this act expressly embraces wills of land; for after giving jurisdiction of probat and administration to the county courts, it directed, that the will should be proved in the county where the testator resided, without regard to the fact whether he had lands in that county or not, and if he had no such residence, then in the county wherein any devised land lay &c; and added—■“ And the proof of any will once well and sufficiently made, in any county, as above directed, shall, and is hereby declared to be of the same force, effect and validity, for the disposing of lands, or other estate, as if the same had been proved in every particular county, where any land or other estate may be.” It further provided, that before a will of lands should be proved, the heir should be summoned to contest it; and if no heir known, proclamation sh'ould be *595 made; and that infants &c. should be at liberty to contest the proof within ten years after the disability removed, and not after. But this law, with respect to the mode of or the number of witnesses, says nothing; and, in these respects, evidently considers wills of land and personalty upon the same footing.
The act of 1748, ch. 5. 5 Hen. stat. at large 454. effectually separated them, requiring that a will of lands should be attested and subscribed by two witnesses, but leaving a will of personals precisely where it stood. From that period down, the uniform practice has been, so far as we can get evidence from the records of the general court and elsewhere, to admit wills of personalty to probat, on the evidence of one witness ; and it lias been the universal opinion of the country, that this was the law. And it must be owing to the universality of this opinion, I suppose, that our books, from Washington down, present but one case in which this point was decided; Glasscock v. Smither, 1 Call 479. decided by this court in October 1798. There, the testator having made a will, in all respects properly executed, a paper of subsequent date was offered for probat, as his last will: it contained several pecuniary legacies, with a devise of all the residue of his estate to a son, and concluded thus—“ This is my last will and testament, being made this 19th October 1793 ; I subscribe and hereby acknowledge”—but the testator did not sign or subscribe the same. One witness proved, that he drew it at the request of the testator; that the decedent had it altered in several particulars; that he had it read over a second time with the alterations, and said he was satisfied, it was his will &c. The district court declared this not to be the last will of Glasscock. This court reversed the sentence. The judgment was as follows-—“ The court is of opinion, that the writing aforesaid ought to be established as the last will of the said George Glasscock deceased, notwithstanding the existence of a will legally executed of a prior date, so far as it may concern the devise of chattels &c. And it is ordered, that the cause be remanded to the said district court, for that court to admit the will to be re *596 corded, unless the parties shall desire to proceed in the contest, upon other grounds, which may be consistent with the of this court.” Now, I cannot understand this (as my late brother Green did, in Redford v. Peggy, 6 Rand. 337.) as a mere decision, that the latter paper was a revocation of the former will, which it might be, without being a will itself. I consider it a declaration of this court, that so far as the proof by one witness was concerned, it was a good will of chattels. The attention of the court was particularly called to the distinction; for the paper, after several pecuniary legacies, devised the residue of his estate to the testator’s son. Nor is my opinion of this case changed by president Pendleton’s note, filed with the papers, which is now before me. It is as follows—“ The act of 1792, p. 169. § 7.—no will in writing or any devise therein of chattels shall be revoked, by a subsequent will, codicil or declaration unless the same be in writing. The paper produced is in writing, and proved by one witness, to have been written by the testator’s direction, read over and corrected by him, and then he declared he was satisfied, and it was his will. Opinion : that it was his will, and ought to be admitted to record as such in the district court, unless opposed upon other legal grounds, than what is contained in the sentence of said court. Error in sentence, and reversed with costs: and the record remanded to the said district court, to admit the said will to be recorded, unless the parties shall desire to proceed in the contest, upon other grounds, which may be consistent with the opinion of this court.” This note is then crossed in several places with the pen, and the opinion written under it, verbatim as it stands in Mr. Call’s report. It seems to me, that the note is equally decisive with the reported opinion, in declaring that proof by one witness is sufficient to establish a will of chattels, even in a contested case, as that was.
In Redford v. Peggy, three judges did intimate their opinions, that two witnesses were necessary to a will of chattels ; but' we did not consider that as a solemn decision on the point, because each of those three judges decided the case upon other points distinct from that.
*597 Upon the whole, I do not feel authorized from any thing I can find, to reverse the decision of the circuit court in the present case, which might shake many wills, and disturb many estates. Yet it is with great reluctance I decide, that one witness may write a man’s will, sign it for him, and then . ° set it up, by his sole testimonjr. It seems a very unsafe ground on which the dispositions of men’s personal estates should rest. It would be much safer, and more natural, to place wills of real and personal estate on the same proof; and I trust, that the legislature will take up this question, and settle it as in their wisdom shall seem best.*
The other judges concurred. Sentence affirmed.

 The legislature, being in session at the time this decision was pronounced, adopted the suggestion here made; see act of 1834-5, ch. 60. Sess. Acts, p. 43. Yet it is important, in respect to wills of personal estate of testators who died before this enactment, that the courts of probat should be informed, as early as possible, that the opinion expressed by three of the judges in Redford v. Peggy, 6 Rand. 316. as to the necessity of two witnesses to establish a will of personals, has been overruled; and, therefore, this case is reported here, somewhat earlier than in the regular series it would have been.